First case this afternoon is 157002 Enos v. McDonald. Ms. Booth, welcome. Thank you, Your Honor. Good afternoon, and if it pleases the Court, my name is Sandra Booth. I'm appearing on behalf of Shirley Enos, who is the widow of the veteran Richard Enos. There are two issues before the Court for consideration. The first is, are the Secretary's findings of fact, as published in the M-21 manual, the type of evidence that the agency must consider in making a determination on a claim? Number two is, if it is the type of evidence that must be considered, did the Veterans Court misinterpret the 5107A allocation of the burden? Let me ask you a question. Certainly. At several points in your brief, you argue that the manual contains positive binding evidence that the Board failed to consider, right? If I said it was binding, it is evidence, Your Honor. It does not create a presumption of service connection. So you agree then with your concession at page 15 of your opening brief that the Secretary's what you call admissions are not binding. You say Ms. Enos does not contend that the Secretary's admissions, as published in the manual, are binding.  Well, we contend they must be considered as evidence just as any other evidence would be, for example, if a claimant submits. If they don't have evidentiary force, if they're not binding evidence, then how is it you're not conceding your case? Well, I think that they have evidentiary force. They are not binding in terms they do not create a presumption of service connection. The Secretary is always free to cite other evidence to weigh against that. Okay. Then let me cut to what I think is the core of this thing. Okay. Your appeal largely rests on whether the manual contains evidence that the Board failed to consider. It's fair to say that, right? Yes. Okay. In relevant part, the manual says inhalation of asbestos fibers can produce, among other diseases, fibrosis, the most commonly occurring of which is interstitial pulmonary fibrosis or asbestosis. Let's assume for a moment that it is binding evidence. You appear to equate the term can with does. Does contain, not can contain. Don't they have separate and distinct meanings? I think they do, Your Honor, which is why it does not create a presumption. The Secretary's manual is not suggesting that it is the only cause. That's right. But rather that the – And not even that it's the most likely cause. It does not indicate one way or the other whether it is or is not the most likely cause. What I think the seminal point is that there is no evidence in the manual to support that this veteran had a different cause. So we have proof of causation. Well, there's no evidence in the manual, but there's evidence, for example, he smoked for 40 years. But there is no medical evidence, Your Honor, that smoking, granted, causes a whole variety of lung diseases, but there's no evidence that interstitial fibrosis is one of them. Also, I would indicate that the record – But, counsel, what you're doing right now is debating with my colleague the weight of the evidence, and we as an appellate court don't get to do that, especially in veterans' cases. So even if I were sympathetic to the idea that a veteran who served in the military 40 years ago, then smoked for 40 years, then 40 years after service came down with a lung condition, if I was sympathetic to the idea that that could have been caused by his service, it would still be something that would be outside the realm of my reach, wouldn't it? No, I don't believe so, Your Honor, because the fact remains there is no evidence that smoking caused this veteran's interstitial fibrosis. But you're arguing over the weight of the evidence and what the facts were. And the only thing we get to do in the veterans' cases as an appellate court is interpret statutes and regulations. And so I would like to hear how you link that argument up with the interpretation of something, because even if all the evidence is on your side and none of it is actually in support of the decision, that's still application of law to fact and, therefore, outside my reach as an appellate court. Well, the question is there is a total absence of evidence to support some other cause. That's what then addresses the question. Well, even if that's a point that we have jurisdiction over, even assuming that's not the way this ought to work, right? I mean, it's not the government's burden to demonstrate that there's an alternative theory upon which we conclude that the veteran had this medical condition. It's the veteran's burden to prove causation, not the government's burden to prove alternative basis, right? Well, I would not necessarily agree with that, Your Honor. I think the claimant under 5107A has the burden of submitting, presenting, and supporting a claim for benefits. It's undisputed that she met every marker except for this dispute about nexus, about causation. Well, that's a pretty big marker to not miss. That's what all litigation is always about, about the nexus. Well, in our view, though, she did not miss it because if the Secretary's manual, his admissions in the manual of a cause and effect between inhalation of asbestos fibers, which is conceded, and the veteran's interstitial fibrosis, no matter how many years later, that's what the Secretary has found, that is a cause. There is no at that point under the court's interpretation of the allocation of the burden under 5107, Mrs. Enos met her burden of going forward. You're saying what is the nature of the burden? The veteran has to come, and you're saying that the veteran's burden is to just so say, Judge Wallach read from the manual, this may be the cause, and then the burden shifts to the government to prove that there were alternative bases for the reason this happened? The manual establishes that it can be a cause, that there is medical science that is to the Secretary's satisfaction between inhalation of asbestos fibers and a subsequent interstitial fibrosis and a host of other problems that the Secretary lists in the manual. The veteran had those two cause-effects. Supposing the manual also says, and smoking can be a cause. I think that would cause a big problem for the veteran. However, as the Veterans Court has construed the benefit of the doubt under the Mitlider case, which is cited in both the principle and reply briefs, if there are two causes for a disability, one service-connected, one not service-connected, the VA must attribute all of the residuals, all of the disability to the service-connected cause unless it is able to show through the medical evidence how one allocates the damage that is due to each independent cause. So even if it said that smoking also can cause interstitial fibrosis, which it doesn't. Well, I keep on troubled by the word you use, it can cause. I mean, that's not enough basis to establish causation. You can have as many manuals or medical journals saying that this may cause this, this could or can cause this. That's not sufficient to meet your burden in the first instance, is it? I think it is. It's sufficient to meet the burden of going forward under 5107A. It left wide open, of course, for the secretary to point to evidence, develop evidence, which showed that there was some other causation, or that there is some particular medical issue in this veteran's file, a medical opinion that would show there are particular clinical factors that would rule out his fibrosis as being asbestos-based. I don't know if that's true, but I know that was never developed. That's not in the file. That was the secretary's burden under 5107B, his burden of non-persuasion, of shifting where the burden got shifted to the secretary under Ortiz for the secretary to prove that the veteran was not entitled to benefits. He could have done that with medical evidence, assuming that a medical opinion would be appropriate or would be forthcoming. That's one thing the secretary could have done. He chose not to. We denied the case while the veteran was still alive without ever requesting that medical evidence, without identifying any evidence that would take this case outside of the causation that the secretary himself recognizes. And, of course, then when the veteran died within that one year afterwards, the record closed because of the peculiarities of this case arising under the old law. So we're left only with the record that we have. Why don't we hear from the government? You're reaching the rebuttal time. Thank you, Your Honor. Mr. Bruskin. May it please the Court. What Mrs. Enos is essentially arguing here, although she disclaims that she's asking for a presumption, is, in effect, a presumption. What she's arguing is that in the vacuum, where there is no probative evidence establishing a nexus between Mr. Enos' interstitial pulmonary fibrosis and his asbestos exposure, that the statement in the manual indicating that there can be a connection is sufficient to invoke the benefit of the doubt rule and for a nexus to be established. Why isn't that not right? Because the manual only states that interstitial pulmonary fibrosis, along with a host of other illnesses, can be caused by asbestos exposure. It then goes on to instruct the ratings officials that they need to determine whether there is, in fact, based on the medical evidence, a connection between the veteran's illness, in this case interstitial pulmonary fibrosis, and his or her asbestos exposure. What more did she need, then, in terms of the evidence? She needed medical evidence of Mr. Enos' pulmonary fibrosis being linked to his asbestos exposure. I don't understand. When you look at somebody's lungs, the lungs don't scream, I was caused by asbestos. So how are you supposed to determine what the cause was? You have a veteran's manual that says it can be caused by exposure to asbestos. It is established by the board opinion that he was a machinist who was reasonably believed to be exposed to asbestos. So that's a fact in the record. So he was exposed to asbestos during his military service. Then he develops an illness, which the manual expressly says can be caused by asbestos exposure. I don't know what more you want. How is he supposed to prove it, in fact, was caused by that? How? What more is necessary? What's necessary is medical evidence that Mr. Enos' specific illness was, in fact, caused by asbestos. What does that mean? How is the doctor supposed to figure that out? He didn't cut him open and say, oh, yep, definitely asbestos. How? There's no medical certainty required, right? I thought the standard was something like more likely than not or something. It's not medical certainty. Yes. What I meant to say is there needs to be a medical opinion on that question, the question of necklace. No. Why a medical opinion? I believe our cases say that lay opinions and other evidence can suffice to establish this. Are you telling me our cases require a medical opinion? And absent a medical opinion, a veteran can never prevail. Under Jandreau, for illnesses such as a pulmonary illness, and Jandreau calls that cancer as a specific one, lay opinions are not sufficient. This isn't a lay opinion. This manual is based on scientific evidence, right? This wasn't – I don't consider the manual lay evidence. Do you? I don't. I was simply addressing the question of whether lay evidence is sufficient. The manual itself is based on scientific evidence, but it does not opine or offer a nexus opinion in Mr. Enos' case. It simply says that it can be related and that it instructs that you need to get a specific determination, whether it's more likely than not that the illness for the veteran was caused by the asbestos exposure. It's particularly important in asbestos exposure cases because the latency period is so long and there are other intervening factors over the decades. The existence of the manual in this instance is evidence enough to get over the fact that in 38 CFR 3.303, there is no specific provision for disability compensation from an exposure illness. And so the manual provides instructions on how to address cases where there is no symptomatology and there was no in-service incurrence of the illness. I don't understand. If I break my leg and I go to the doctor, how is he supposed to opine on how I broke my leg? Well – That's what you're asking for. You want this doctor to opine on how this man developed this lung condition. How is the doctor supposed to offer any firsthand testimony as to the cause of his lung condition as opposed to the symptoms, the state of that sort of thing? How is the doctor supposed to do that? Why is that the missing piece? Why, if some random doctor came in and said, well, the manual says this, and therefore I think it sounds good to me, I don't understand the standard that you want. Well, the standard needs to be – there is – pulmonologists have the ability to look at a CT scan, and that's what happened here. They looked at the CT scan to diagnose the illness. Where there are asbestos-caused illnesses, I would presume – And what did they say? I mean, what did they say was the cause? They did not because they were not asked yet. There was never a request from the VA for a specific examination to answer the nexus question, and that would have been a necessary step had Mr. Enos not died during his claim. So it's just out of luck because there's no way he could – you're telling us there's no way he could possibly have proven the case after the fact, after he's – Yes, because the application of the statute that provides the accrued benefit claim to Mrs. Enos requires that only evidence in the file of the VA at the time of the claimant's death can be considered. So you can't, for instance, do a necropsy or an autopsy? No. Now, you could, in theory, do that for a DIC claim, which would be a claim going forward, but under the statute that provides for accrued benefits, the evidence cuts off at the date of death. But is my admittedly simplistic idea of medicine incorrect? I mean, aren't you saying the only thing missing here is the doctor saying this lung condition was caused by asbestos, and how could the doctor possibly know that? I don't know much about this area of medicine, but when you're looking at lung cancer or cysts or whatever on the lungs, do they really, by looking at them, tell you who caused them or what caused them, what particular form of exposure? I don't see that in the literature. So why is the doctor's random opinion about what caused it – why is that so important? It's like asking him what caused me to break my leg. It just doesn't make sense to me. Well, I mean, I'm not a pulmonologist, but my understanding of the medical reports here is that one can look at the CT… Are they looking for encapsulations of asbestos fibers? I think they are. They're looking for pleural plaques. I did a little bit of research on asbestosis. There is indications of interstitial pulmonary fibrosis caused by inhalation. It is something that you can see. Mr. Enos never actually was seen by a pulmonologist, so there's no pulmonologist report in his file. But I do believe that a pulmonologist could opine as to the cause. Okay, so this isn't like my broken leg example where it could have been caused by any number of different things. You're telling me that medical science in this case is such that if he had had the right exam, it could have told us with some degree of certainty whether or not it was asbestos-caused or not? With at least the certainty required under the disability benefits that it was more likely than not that his asbestos exposure is linked to his interstitial pulmonary fibrosis. But because he died of this very disease, which may have been caused by his military service, his widow doesn't get anything because that test can't be performed after death? Well, his cause of death was not actually interstitial pulmonary fibrosis. It was listed in the medical reports as other illnesses caused, lung illnesses. But under the statute, he would be, in fact, out of luck for the accrued benefits. But that doesn't mean that his widow is out of luck going forward for all benefits because there is a DIC claim where she can attempt to get additional evidence showing that the cause of death was linked to the in-service. That's not an issue in this case? It is not, no, Your Honor, because the evidence supports it. You, along with everyone else in the Department of Justice, seems to argue that we lack jurisdiction. Every time there's any argument that it's a question of fact. And yet we've held that this court retains, I'm quoting, jurisdiction to review the veterans' court legal determination with respect to the types of evidence which may support a claim for benefits. There are at least four presidential opinions reaffirming that. Prince, well, I don't mean to cite them to you. Questions about the manual's contents undoubtedly raise issues with respect to the type of evidence which can support a claim for benefits, don't they? Yes. So why don't we have jurisdiction to determine that question? If the veterans' court here had actually answered that question and had addressed whether the manual was of the type of evidence that should or could be considered, that would be a question that this court… Or if they should have answered that question. If they should have. But they assumed that it was considered as evidence. The board considered the provisions of the manual. They did not exclude consideration of… When you say they assumed the board considered it, didn't the board expressly reference the manual on page 38 of the Joint Appendix and 39 and 40? They do. What I mean is they didn't say, well, this isn't evidence that could possibly be probative. They simply said this was considered by the board explicitly. We find no error in their consideration. What Mrs. Enos, and the reason jurisdiction was raised in this case and why it's different, is that first she alleges that it was not considered, and plainly it was, as Judge Moore just cited. But then she argues that it should have been considered differently. She wants it to be considered a party admission. There's multiple problems with that. The first is that this court doesn't have jurisdiction over the question of how that evidence should be treated. If we were to agree with you that the manual was in fact considered by the board, would this appeal devolve into an interpretation or weighing of the evidence, and in particular what the word can produce fibrosis mean, an interpretation of the evidence, and what it means when it says can as opposed to does or something else? Yes, I believe it would. I think it is really a question of what weight was given to the manual in the consideration of Mr. Enos' claim. She's arguing now that she thinks it should have been given greater weight because she believes it's a party admission. The concept of the party admission doesn't even really go to the weight. So not only does this court not have jurisdiction, but a party admission is just an evidentiary question as to whether it can be admitted. It does not mean, even if it was considered a party admission, that it should be given greater weight. The government's not arguing it's not evidence that can or should be considered by the board, are you? We do not in our brief, though I don't see how this could be probative evidence in an individual claimant's case of the nexus question. It could be if the question was whether it was possible that it was caused by this. True, and if the ruling had been the ratings official said it's not possible that your IPF was caused by this, agreed. But where someone has it and there's asbestos exposure conceded, the question of whether their illness was caused by asbestos exposure can't be answered by a can-be-caused statement in the manual. It is at best speculative, which cannot support a claim under this court's holding. At what point does the burden shift to the government? How much does the appellanteer have to prove up in order for the burden to shift? It's the preponderance of the evidence, so I guess it's been analogized to the 51%, but it needs to be demonstrated that it's more likely than not, or at least the evidence is put into equipoise, where there is an approximate balance between the positive and the negative evidence. In that case, the benefit of the doubt rule applies, and the tie goes to the claimant in that case. So the government in this case didn't really proffer any evidence to the contrary, isn't that right? That's right. So your whole case is that she didn't meet her burden of putting on the 51%. Right, and she concedes that there is no probative medical evidence aside from her relying on the manual, that there's no any other probative evidence on the nexus question. So she's solely relying on the statement in the manual. Okay. Melissa Cordes, any further questions? Thank you. Thank you. Your Honor, I want to first address something that's absolutely essential to this case, and that is an error in counsel's statement that the veteran must show that it is to a preponderance that he is entitled to service connection, must establish nexus to a preponderance. That's absolutely not true. The veteran must submit a claim for and support it, but it is the secretary who must disprove it by a preponderance. If the evidence is in equipoise or if there is no evidence contrary to the veteran's own evidence, then the benefit of the doubt under 5107B goes to the veteran. So it is not true. It's 50%, not 51%. Correct, correct. In equipoise, when it's too close to call, this Court in another decision referred, characterized, or compared it to the rule in baseball about the tie goes to the runner. If it's too close to call, the tie goes to the runner. And in this case, the tie goes to the veteran if it's too close to call. Who makes the decision? I mean, you say this case has legs in your view because the manual puts this case in equipoise. Who decides that? I mean, doesn't the Board and the Court of Veterans Claims get to decide? They get to weigh the evidence. They do. Was this 50% or is it far less than that when we're dealing just with the manual? Well, I think those issues – I've got several responses to that issue, Your Honor. Number one, the Board did not consider the manual as evidence. The reference at page 38, it refers to the manual provisions and its recitation of what the law is. On page 39, it lists the medical evidence, but it does not discuss the Board's findings as medical evidence, does not include it in that list what it has identified as evidence. And at page 41, it concludes that the evidence did not show that the veteran's disability, as likely as not, was due to asbestos exposure, but it explains that conclusion by stating there is no competent medical opinion and that the veteran's own life statements were not competent. Both those are correct, but there's nothing indicating in there that it gave any consideration to the Secretary's own findings. And I would submit that it must because under 714OC, which is the reasons are basically statute generally, but under 7104C, Congress instructs that the Board must comply with instructions of the Secretary, and I would submit that those manual provisions, which are specifically made to give guidance to adjudicators and promote consistency, are instructions. Also, I think those are my primary concerns about the Secretary's argument. Your Honor, the benefit of the doubt is a concept that is not just necessarily a foggy kind of amorphous feel-good concept. If the claimant has supported his claim or her claim, and in this case everything's been supported, and if we assume, if I may assume for a moment that the manual is evidence, then the final element of causation has also been supported. 5107B, nor A for that fact, requires a claimant to anticipate that there might be other possible causes to their disability and disprove those. It simply isn't a part of the law, and yet that's what the Department of Justice would ask that you hold. Once the claimant has supported a theory, then under 5107B, the burden of non-persuasion has shifted to the Secretary, and that's when the Secretary would have been free, had he chosen to develop evidence that, again, assuming it exists, to develop evidence that shows that it is more likely than not that Mr. Enos' interstitial fibrosis was caused by some non-service-connected cause. There is no such evidence in the file. So when we talk about putting the evidence in equipoise, the scales kind of go like that in this case because there is no contrary evidence, nothing that rebuts or contradicts the Secretary's own findings about causal connection. There is no evidence of what some other cause might be. The Secretary has never even claimed that there was another cause until this argument. And I see my time is up. Thank you, Your Honor. We thank both counsel and the cases submitted.